UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YAHAIRA MUNOZ, | : | CIVIL ACTION NO. |
|    Plaintiff | : | 3:19-cv-1793-MPS |
| | : | |
| v. | : | |
| | : | |
| JLO AUTOMOTIVE, INC. d/b/a | : | AUGUST 14, 2020 |
| EXECUTIVE KIA, | : | |
|    Defendant | : | |

# **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION**

      Plaintiff, Yahaira Munoz ("Plaintiff"), respectively files this motion for reconsideration regarding this Court's ruling on the Truth in Lending Act ("TILA") and the Connecticut Unfair Trade Practices Act ("CUTPA") claims on her Motion for Default Judgment (ECF #12, hereinafter the "Ruling"). Specifically, Plaintiff believes that the Court may have overlooked a change in the operative regulations that would likely lead to a different outcome. Reg. Z § 12 C.F.R. § 226.4(d)(3) was revised in 1996. The revised regulation was not addressed in Plaintiff's Memorandum of Law largely because the defaulting defendant had not opposed the motion for judgment and did not challenge Plaintiff's assertion that GAP was mandatory. Plaintiff also requests leave to address issues relating to voluntariness and parol evidence in the Ruling not previously addressed in Plaintiff's underlying motion for default judgment.

1

I.     **RELEVANT FACTS**

Largely at issue in Plaintiff's claim is whether or not the imposition of a GAP addendum by a car dealership was mandatory. The mandatory nature was dispositive as to whether or not GAP was required to be disclosed as a finance charge. As the court noted:

> According to the complaint, as Muñoz was reviewing the Contract with a member of the Executive Kia staff she "questioned a $752 charge for 'GAP insurance'". In response, the representative informed Muñoz that "GAP insurance was a mandatory component of the transaction." GAP insurance is an addendum to a retail installment sales contract, which provides that, subject to certain conditions and limitations, in the event of a total loss of the vehicle the holder of the contract will accept the insurance proceeds in full satisfaction of the outstanding balance owed on the contract. According to the complaint, although Muñoz was not interested in purchasing GAP insurance, she decided to pay this cost to complete the transaction, since she had been told that this fee was mandatory as part of Executive Kia's "low income program."

(Citations omitted. Emphasis omitted.) Ruling, pp. 1-2. However, as the court further noted, the retail installment contract included language stating that the GAP was optional.

In ruling on the TILA claim, the Court reasoned that the written disclosure of the purportedly optional nature of the GAP fulfilled the requirements of Regulation Z to exclude GAP from the finance charge. In reaching that conclusion, the Court cited a 2009 decision, *Clark v. Drummer Boy Auto Sales*:

> Regulation Z addresses items such as GAP insurance, stipulating that such "[c]harges or premiums paid for debt cancellation coverage for amounts exceeding the value of the collateral securing the obligation or for debt cancellation or debt suspension coverage in the event of the loss of life, health, or income or in case of accident may be excluded from the finance charge .. . ." 12 C.F.R. § 226.4(d)(3)(emphasis added). However, this exclusion applies only "if three conditions are fulfilled: **(1) the lender discloses in writing that debt cancellation coverage is not required;** (2) the lender discloses the fee for the initial term of coverage; and (3) the consumer signs or initials an 'affirmative

2

written request for coverage after receiving' these two disclosures." *Clark v. Drummer Boy Auto Sales, LLC*, No. CIV. 3:06CV01549AWT, 2009 WL 902382, at *2 (D. Conn. Mar. 31, 2009) (citing 12 C.F.R. § 226.4(d)(3)).

(Citations omitted. Emphasis modified from original.) Ruling, pp. 5-6.

Although the decision in *Clark* indicates that it is citing directly from Regulation Z, that quoted Reg. Z language does not reflect the present text of 12 C.F.R. § 226.4(d)(3), which reads:

> Voluntary debt cancellation or debt suspension fees. Charges or premiums paid for debt cancellation coverage for amounts exceeding the value of the collateral securing the obligation or for debt cancellation or debt suspension coverage in the event of the loss of life, health, or income or in case of accident may be excluded from the finance charge, whether or not the coverage is insurance, if the following conditions are met:
> (i) **The debt cancellation or debt suspension agreement or coverage is not required by the creditor, and this fact is disclosed in writing**;

(Emphasis supplied.). This change in the language is significant, and it is pertinent to the issues raised in this case. Under the prior language quoted in *Clark,* written disclosure that "debt cancelation is not require" is sufficient to exclude GAP. Under the new language, exclusion requires both written disclosure and that the coverage is, as a matter of fact, not required.

## II.    LEGAL STANDARD

"The standard for granting a motion for reconsideration is strict." *Palmer v. Sena,* 474 F. Supp. 2d 353, 355 (D. Conn. 2007), *citing Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader,* 70 F.3d at 257. "A motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.*

### III. ARGUMENT

#### a. TILA Claim

##### 1. Text of the Regulation

In the instant matter, it appears that the ruling against Plaintiff on the TILA claims hinged on an incorrect citation/quote of § 226.4(d)(3) of Regulation Z. Specifically, the Court reasoned that by simply having the disclosure the requirements were satisfied:

> This succinct paragraph states in bold text that GAP protection is "**not required to obtain credit**" and thus fulfills TILA's requirement of a "clear and conspicuous" disclosure. It also fulfills the three requirements for excluding "GAP insurance" from the finance charge, i.e., it discloses that GAP insurance is not required, it discloses the fee for the initial term of coverage, and Muñoz signed the affirmative written request for coverage right beneath these disclosures. Muñoz does not claim that the written disclosure was unclear, inconspicuous, or incomplete. Instead, she asserts that the salesperson's oral statement that GAP insurance *was* required to obtain credit via the "low income" program negated the written disclosure. But Muñoz cites no authority suggesting that compliance with the written disclosure requirements of TILA is insufficient to forestall TILA liability when the defendant makes an oral statement contradicting the written TILA disclosures.

Ruling, pp. 6-7.

As discussed above, under § 226.4(d)(3), the requirement is not merely a disclosure, but that the GAP charge is *actually* not required. This comports with the Federal Reserve staff commentary to Regulation Z from 2010, which provides:

> Credit life, accident, health, or loss-of-income insurance, and debt cancellation and suspension coverage described in § 226.4(b)(10), **must be voluntary in order for the premium or charges to be excluded from the finance charge. Whether the insurance or coverage is in fact required or optional is a factual question.** If the insurance or coverage is required, the premiums must be included in the finance charge, whether the insurance or coverage is purchased from the creditor or from a third party. If the consumer is required to elect one of several options-such as to purchase credit life insurance, or to

4

assign an existing life insurance policy, or to pledge security such as a certificate of deposit-and the consumer purchases the credit life insurance policy, the premium must be included in the finance charge. (If the consumer assigns a preexisting policy or pledges security instead, no premium is included in the finance charge. The security interest would be disclosed under § 226.6(a)(4), § 226.6(b)(5)(ii), or § 226.18(m). See the commentary to § 226.4(b)(7) and (b)(8).)

75 FR 7658-01 (Feb. 22, 2010).

Indeed, the comments[1] on the regulation indicate the inquiry centers on whether the charge is truly voluntary, as opposed to whether or not the disclosure was made. No doubt *sub rosa* to the regulation is to avoid the situation that occurred here: all sorts of disclosures are made to a consumer, but if the reality of the situation is that if a charge such as GAP is mandatory, the disclosures are meaningless. While Plaintiff agrees that the Defendant made certain written disclosures regarding the voluntary nature of GAP, she also established that these disclosures were negated by Defendant telling her that the charge was mandatory under their "low income program". As such, there is controlling authority, § 226.4(d)(3), which would lead to a different conclusion by the Court and necessitates reconsideration.

## 2. Evidence of Voluntariness

Since this matter was an unopposed motion for judgment, Plaintiff did not anticipate an objection to her assertion that the GAP was not mandatory on account of the statements in her affidavit. As noted above, the issue of voluntariness of the purchase of GAP is a factual issue. Indeed, contradictory or misleading statements about voluntariness can vitiate written disclosures.

---

[1] "Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth in lending law." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

In *Garl v. Genesee Valley Auto Mall*, No. 16-13712, 2018 WL 994318, at *3 (E.D. Mich. Feb. 21, 2018) (quoting *In re Cruz*, 441 B.R. 23, 33 (Bankr. E.D. Pa. 2004); *see also In re Milbourne,* 108 B.R. 522, 541 (Bankr.E.D.Pa.1989)*,* the court used a two part test to determine whether or not a GAP contract was mandatory despite a disclosure stating it was voluntary:

> This approach provides Plaintiffs with an avenue to prove that the GAP insurance was compulsory, despite their signatures on a contract stating otherwise. To prove this, they must show that "(1) the lender affirmatively represented, by words or by conduct, that insurance was in fact required; and (2) as a result of the lender's actions, [they] purchased insurance coverage that it is likely that [they] would not have otherwise purchased."

Similar to Plaintiff in the instant case, the plaintiffs in *Garl* testified at deposition that:

> At some point, they discussed GAP insurance, a type of insurance that pays the difference between the total loss price of a vehicle and the outstanding balance on the loan. O'Keefe represented that Plaintiffs had to purchase GAP insurance for their loan to be approved. Based on his representations, Plaintiffs bought the insurance for $695. Plaintiffs did not want, and would not have purchased, GAP insurance had they not believed it was mandatory. …O'Keefe eventually presented Plaintiffs with a retail installment sales contract, which they had to sign to complete the transaction. Plaintiffs briefly reviewed its language before signing and initialing in the various places O'Keefe indicated. The contract included forms indicating that the GAP insurance was optional, not mandatory.

(Citations omitted.) *Id.* at *1.

This decision in *Garl* was a denial of a motion for summary judgment filed by the dealership, so the standard of review on the Plaintiffs was more stringent that in this motion for judgment, where Plaintiff's allegations of fact are taken as admitted by the defendant. Nevertheless, the plaintiffs survived summary judgment, because the disclosures did not dispositively show that the GAP purchase was mandatory. Indeed, the court reasoned that the Plaintiffs could prevail on their claims at trial:

> Although these documents, accompanied by Plaintiffs' signatures, may not foreshadow success before a jury, they do not conclusively entitle Defendant to

6

summary judgment. The Federal Reserve Board has instructed that whether insurance is required or optional is a factual question and that an inquiry into the circumstances is "not foreclosed by the presence of a customer's signature on an insurance authorization."

*Id.* at *3.

Under the *Garl* test, Plaintiff here proved through her affidavit that the dealership told her that the GAP was mandatory despite a disclaimer stating otherwise. And, she purchased the GAP as a result of the representation that it was mandatory.

### 3. Parol Evidence

Similarly, due to the nature of the briefing, Plaintiff was not able to address whether the parol evidence rule[2] precludes the testimony that the GAP was mandatory. Use of the parol evidence rule in TILA analysis is not appropriate, because the rule is a tool of contract interpretation rather than a means of determining whether TILA disclosures are accurate. The reasoning behind this is that the consumer is not seeking adjudication of their rights or obligations under the contract, but utilizing a private right created by statute regarding accuracy of disclosures. As the district court for the Northern District of New York noted:

> Some courts have held that, in a TILA action (specifically during the voluntary acceptance of credit insurance), the parol evidence rule bars the introduction of oral representations made prior to or contemporaneously with the execution of a loan agreement. These decisions would seem to be at odds with the Federal Reserve Board's "Official Staff Commentary," which states that "whether the [credit] insurance is in fact required or optional is a factual question."

---

[2] Connecticut employs the following definition of the parol evidence rule. "The parol evidence rule prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract." (Internal quotation marks omitted.) *Scinto v. Sosin*, 51 Conn.App. 222, 242, 721 A.2d 552 (1998), *cert. denied*, 247 Conn. 963, 724 A.2d 1125 (1999). "The parol evidence rule does not apply, however, if the written contract is not completely integrated." *Lester v. Resort Camplands International, Inc.*, 27 Conn.App. 59, 65, 605 A.2d 550 (1992).

(Footnotes omitted.) *Macheda v. Household Fin. Realty Corp. of New York*, No. 1:04-CV-0325 GTS/GJD, 2009 WL 113474, at *10 (N.D.N.Y. Jan. 15, 2009).

In *Macheda,* the Plaintiffs argued "the parole evidence rule has no applicability at all to the TIL credit insurance voluntariness issue, for here the consumer is not trying to alter the written terms of a contract, i.e., is not challenging the contractual obligation to pay the insurance premium.' In addition, Plaintiffs argue that they have raised herein evidence of fraud and duress with respect to the credit insurance premiums." (Citations and internal quotation marks omitted.) *Id.* The court denied the defendant's motion *in limine* on the extrinsic evidence regarding the voluntariness of credit insurance, "because [t]he parol evidence rule does not apply [when the plaintiffs] are not trying to prove that the [defendant's] mortgage is not binding as written or that there was some preexisting agreement with [Defendant] that modifies the terms of the mortgage they entered into." (Internal quotation marks omitted.). *Id.* at *10 citing Darling v. Indymac Bancorp, Inc.*, 06–CV–0123, 2008 WL 3539518, at *10 (D.Me. Aug.12, 2008)*; Manufacturers Hanover Trust v. Yanakas*, 7 F.3d 310, 315 (2d Cir.1993).

TILA case law regarding applicability of the parol evidence rule and the dispositivity of written disclosures has largely grown out a series of Fifth Circuit cases from the late 1970s.[3] Prominent in this line are *USLIFE Credit Corp. v. Federal Trade Comm'n*, 599 F.2d 1387 (5th Cir. 1979) and *Anthony v. Cmty. Loan & Inv. Corp.*, 559 F.2d 1363 (5th Cir. 1977), cited by this court. They held that if the proper paper disclosures are made, purchase of insurance is voluntary in the absence of any

---

[3] *See also Hicks v. Star Imports, Inc.*, 5 Fed. Appx. 222 (4th Cir. 2001) (follows the decision in Anthony); See also *Smith v. Tower Loan of Miss.*, 216 F.R.D. 338 (S.D. Miss. 2003), *aff'd*, 91 Fed. Appx. 952 (5th Cir. 2004); *White v. Superior Fin. Servs., L.L.C.*, 2014 WL 972211 (N.D. Ala. Mar. 12, 2014) (following *USLIFE*); *Dixon v. S. & S. Loan Serv. of Waycross*, 754 F. Supp. 1567 (S.D. Ga. 1990) (following *Anthony*); *Kramer v. Marine Midland Bank*, 559 F. Supp. 273 (S.D.N.Y. 1983) (same).

allegation or finding of customer illiteracy, fraud, or duress, and courts should not entertain parol evidence to the contrary.

The facts of the leading cases from this line are distinguishable from the present matter. In *Anthony v. Cmty. Loan & Inc. Corp.*, the consumer was not actually told that the additional charges were mandatory. The forms were pre-filled, and while the plaintiff did not want the credit insurance at issue, the plaintiff did not actually dispute or protest the presence of these charges and there was a disclosure that stated it was voluntary. *Id.* at 1370. Other than being prefilled, there was no indication that the lender ever said that the charges were "required". *Id.* Similarly, in *Smith v. Tower Loan of Miss*, which cites to *Anthony*, the consumer argued the inclusion of the purchase of vendor's single interest insurance ("VSI") on a seller's preprinted contract amounted to the purchase and purchase from their specific vendor to be mandatory. *Smith* at 224. However, she never alleged that at the time of consummating the transaction that she questioned the charge or desired to purchase VSI from a different vendor. "As seen in this case, the plaintiff signed the document without inquiring about the VSI insurance, but now claims that *if* she had tried to choose her own provider, the creditor would have refused. This type of claim, however, is based almost exclusively on speculations." *Id.* at 225.

At the time, these cases were sharply criticized on a number of grounds, including the failure to consider the FRB's position. *See* Sheffey, Credit Life and Disability Insurance Disclosures Under Truth in Lending; The Triumph of Form over Substance, 8 Fla. St. U.L. Rev. 463, 477–490 (1980)(Attached). Subsequent to those decisions, in 1980, the United States Supreme Court issued its decision in *Ford Motor Credit v. Milhollin*, supra. at 565, in which it held that courts should defer to the FRB's

9

opinions in interpreting TILA unless demonstrably irrational. "At the very least, that caution requires attentiveness to the views of the administrative entity appointed to apply and enforce a statute. And deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive for several reasons." The Court goes on to state that the Board should be followed due to general deference to agencies in the interpretation of their regulations, *Id.* at 566, the highly technical nature of TILA, *Id.* at 566-567, and by "necessity":

> [W]holly apart from jurisprudential considerations or congressional intent, deference to the Federal Reserve is compelled by necessity; a court that tries to chart a true course to the Act's purpose embarks upon a voyage without a compass when it disregards the agency's views. The concept of "meaningful disclosure" that animates TILA cannot be applied in the abstract. *Meaningful* disclosure does not mean *more* disclosure. Rather, it describes a balance between competing considerations of complete disclosure . . . and the need to avoid . . . [informational overload.] And striking the appropriate balance is an empirical process that entails investigation into consumer psychology and that presupposes broad experience with credit practices. Administrative agencies are simply better suited than courts to engage in such a process.

*Id.* at 568-569.

While not directly overturned, *Milhollin* arguably makes *USLIFE, Anthony* and related decisions no longer sound precedent. While there are some cases that continue to follow the *USLIFE* line still, even in this district, issues of voluntariness are align with the express position of the Federal Reserve Board that voluntariness is a question of fact, including *Clark*.

### i. Clark v. Drummer Boy Auto Sales, LLC

Plaintiff also seeks to address the decision in *Clark* as she had not done so in her motion for judgment due to the defaulted status of the defendant. The cited ruling in

10

*Clark* was a denial of a motion for reconsideration on a motion for summary judgment filed by the plaintiff as to liability only. *Clark,* supra. at *1. With respect to the TILA cause of action, the plaintiff in *Clark* argued that the cost of GAP should have been disclosed as a finance charge. *Id.* at *2. The dealership, in opposing summary judgment, claimed that the plaintiff affirmatively requested GAP and signed appropriate forms in compliance with § 226.4(d)(3)(i), thus it was properly excluded from the finance charge. *Id.* The opinion is silent as to precisely what Clark said about the inclusion of GAP as voluntary, other than she disagreed with the dealership's characterization of what happened:

> As to the first condition [of § 226.4(d)(3)(i)], the court perceives a place on the GAP contract which gave Clark the ability to decline to purchase the GAP insurance. For the second condition, defendants claim that the plaintiff requested GAP coverage and that the price was disclosed. Clark disagrees. Finally, as to the third element, Clark has signed an affirmative written request for the GAP insurance. Whether the first two disclosures on what she signed were sufficient **is an issue for the factfinder**.

*Id.* (emphasis supplied).

Thus, the district court did not hold that *Clark* was precluded from arguing that GAP was mandatory; the ruling was only that the plaintiff could not receive summary judgment on that issue. In this case, the defendant is bound by the well pled allegation that the GAP was, in fact, mandatory.

### b. CUTPA claim

The Court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the CUTPA claim on account of it being largely premised on the TILA violation and representations regarding the "low income program". Should the Court reconsider its

ruling on the TILA claim, Plaintiff respectfully requests that it exercise jurisdiction over the CUTPA claim and consider the claims made in the underlying Motion for Judgment.

## IV. CONCLUSION

For the above reasons, Plaintiff respectfully requests that the Court reconsider its rulings on the TILA and CUTPA claims.

                PLAINTIFF, YAHAIRA MUNOZ

                By: /s/ *Daniel S. Blinn*
                    Daniel S. Blinn (ct02188)
                    Brendan L. Mahoney (ct29839)
                    Consumer Law Group, LLC
                    35 Cold Spring Road, Suite 512
                    Rocky Hill, CT  06067
                    (860) 571-0408
                    Fax: (860) 571-7457
                    dblinn@consumerlawgroup.com
                    bmahoney@consumerlawgroup.com

## CERTIFICATION

      I hereby certify that on August 14, 2020, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                       /s/ *Daniel S. Blinn*
                                       Daniel S. Blinn