UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YAHAIRA MUÑOZ,<br>*Plaintiff*,<br>v.<br>JLO AUTOMOTIVE, INC. d/b/a EXECUTIVE KIA,<br>*Defendant*. | No. 3:19-cv-01793 (MPS) |

**RULING ON MOTION FOR RECONSIDERATION**

Plaintiff Yahaira Muñoz brought this action against JLO Automotive, Inc., doing business as Executive Kia ("Executive Kia"). She alleged that Executive Kia violated state and federal consumer laws when providing financing for her car purchase. Specifically, she set out claims against Executive Kia for: (i) violating the Truth in Lending Act (TILA) by failing to include the cost of so-called "GAP insurance" charged in the transaction as part of the finance charge; (ii) violating the Electronic Funds Transfer Act (EFTA) by conditioning the loan on Muñoz's paying via preauthorized fees; and (iii) violating the Connecticut Unfair Trade Practices Act (CUTPA). I granted Muñoz's motion for default against Executive Kia for failure to respond to her complaint. ECF No. 9. Muñoz moved for default judgment and I granted her motion in part and denied it in part. ECF No. 12. Muñoz now moves for reconsideration of the portion of my ruling denying in part her motion for default judgment. For the reasons set forth below, the motion is GRANTED and the portion of my earlier ruling (ECF No. 12) denying the motion in part, specifically Sections III.A. and III.C, are VACATED.

**I.     BACKGROUND**

1

I incorporate by reference and assume familiarity with the factual background and the legal standard for a motion of default judgment set forth in my previous ruling on the motion for default judgment. ECF No. 12 Sections I and II.

On August 14, 2020, Muñoz filed a motion for reconsideration of the Court's order. ECF No. 15. In her motion for reconsideration, Muñoz argues principally that I overlooked language in Regulation Z in concluding that a disclosure in the agreement she signed foreclosed her TILA claim against Executive Kia, and that, despite that written disclosure, Executive Kia's oral statement to her that GAP insurance was mandatory was sufficient to establish a TILA violation. ECF No. 15.

## II.     STANDARD OF REVIEW

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). The standard on a motion for reconsideration is "strict," and the motion may be granted only if "the moving party can point to controlling decisions or data that the court overlooked," *Lewis v. Guardian Loan Co.*, No. 3:19-CV-704 (CSH), 2019 WL 7882488, at *1 (D. Conn. Oct. 28, 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)), i.e., data or controlling decisions that would "reasonably be expected to alter the conclusion reached by the court." *Id*. The Second Circuit has further indicated that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Virgin Atl.*

*Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted).

**III.   DICUSSION**

In my ruling, I noted that, even though Executive Kia told Munoz that GAP insurance – which provides that in the event of a total loss of the vehicle the lender will accept the insurance proceeds in full satisfaction of the outstanding balance owed under the contract – was mandatory, a conspicuous statement in the agreement she signed made clear that it was optional. I concluded that, under Regulation Z, Executive Kia was allowed to exclude the cost of the GAP insurance from the finance charge and therefore did not violate TILA.  Muñoz argues that this conclusion misreads the operative language of  Regulation Z, which provides as follows:

> (3) Voluntary debt cancellation or debt suspension fees. Charges or premiums paid for debt cancellation coverage for amounts exceeding the value of the collateral securing the obligation or for debt cancellation or debt suspension coverage in the event of the loss of life, health, or income or in case of accident may be excluded from the finance charge, whether or not the coverage is insurance, if the following conditions are met:
> 
> > (i) ***The debt cancellation or debt suspension agreement or coverage is not required by the creditor, and this fact is disclosed in writing***;
> > (ii) The fee or premium for the initial term of coverage is disclosed in writing. If the term of coverage is less than the term of the credit transaction, the term of coverage also shall be disclosed. The fee or premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under § 226.17(g), and certain closed-end credit transactions involving a debt cancellation agreement that limits the total amount of indebtedness subject to coverage;
> > (iii) The following are disclosed, as applicable, for debt suspension coverage: That the obligation to pay loan principal and interest is only suspended, and that interest will continue to accrue during the period of suspension.
> > (iv) The consumer signs or initials an affirmative written request for coverage after receiving the disclosures specified in this paragraph, except as provided in paragraph (d)(4) of this section. Any consumer in the transaction may sign or initial the request.
> 
> 12 C.F.R. § 226.4(d)(3) (emphasis added).

Upon closer review of the language bolded and italicized above, I agree with Muñoz Specifically, Section 226.4(d)(3)(i) sets forth two requirements: (1) that the GAP insurance not be mandatory, and (2) that its non-mandatory nature be disclosed in writing.  My ruling omits the first requirement.  I mistakenly relied on a summary of Regulation Z set forth in *Clark v. Drummer Boy Auto Sales, LLC*, which stated that:

> Regulation Z, 12 C.F.R. § 226.4(d)(3)(i), provides that "[c]harges or premiums paid for debt cancellation coverage ... may be excluded from the finance charge, whether or not the coverage is insurance," if three conditions are fulfilled: (1) *the lender discloses in writing that debt cancellation coverage is not required*; (2) the lender discloses the fee for the initial term of coverage; and (3) the consumer signs or initials an "affirmative written request for coverage after receiving" these two disclosures.

*Clark v. Drummer Boy Auto Sales, LLC*, CIV. 3:06CV01549AWT, 2009 WL 902382, at *2 (D. Conn. Mar. 31, 2009) (quoting 12 C.F.R. §226.4(d)(3)(i)) (emphasis added). The italicized language above from *Clark* is an incomplete summary of the language in the regulation in that it omits the first of the two requirements, that the charge not be mandatory. When that requirement is taken into account, Munoz's allegations show that she is entitled to prevail on her TILA claim.  In her complaint, Muñoz alleges that Executive Kia said that the GAP insurance was mandatory, and I must accept her allegations as true on a motion for default judgment.  And because I must also draw all reasonable inferences in favor of Munoz on such a motion, I must accept that GAP insurance was in fact mandatory – which takes Executive Kia's conduct out of the exemption in the above-quoted portion of Regulation Z.

I find that the above-quoted portion of Regulation Z is clear, but even if it was treated as ambiguous, Munoz would still prevail on her TILA claim. The Federal Reserve Board, which promulgated  Regulation Z, has stated, through its staff, that items such as GAP insurance must be, in fact, voluntary to be lawfully excluded from the finance charge.   Truth in Lending,

4

Amendments to Regulation Z and staff commentary, 75 Fed. Reg. 76508-01 (Feb. 22, 2010)("Credit life, accident, health, or loss-of-income insurance, and debt cancellation and suspension coverage described in § 226.4(b)(10), must be voluntary in order for the premium or charges to be excluded from the finance charge. Whether the insurance or coverage is in fact required or optional is a factual question. If the insurance or coverage is required, the premiums must be included in the finance charge, whether the insurance or coverage is purchased from the creditor or from a third party."). Because "Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth-in-lending law," *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980), I would defer to the view of Board staff that, regardless of the written disclosures made, the GAP coverage must be, in fact, voluntary.  Thus, notwithstanding its clear disclosure in the relevant agreement, Executive Kia violated Regulation Z and TILA by telling Munoz that GAP insurance was required and by failing to include its cost, as well as the interest on that cost, in the finance charge.

In addition, Muñoz argues that if I conclude that TILA is violated, then I must also reconsider the dismissal of the Connecticut Unfair Trade Practices Act (CUTPA) claims. Under 28 U.S.C. § 1367, federal courts are permitted to exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction." Given that I have found a violation of TILA, I will now reconsider Muñoz's CUTPA claim.

Muñoz argues that a TILA violation offends public policy and thus also violates CUTPA. EFC No. 11-1 at 10-13. CUTPA prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. In determining whether a practice is unfair or deceptive under CUTPA, courts evaluate a series of factors:

5

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers….

*Ulbrich v. Groth*, 310 Conn. 375, 409 (2013) (alterations omitted). A violation of TILA offends the public policy embodied in TILA, and several courts have thus held that a TILA violation constitutes a CUTPA violation. *See Conley v. 1008 Bank Street, LLC*, 2020 WL 4926599, at *15 (citing cases). Accordingly, I conclude that Executive Kia's TILA violation—mandating GAP without including the cost of GAP in the finance charge — violated CUTPA. Therefore, I vacate the portions of my ruling regarding TILA and CUTPA and find in favor of Muñoz under TILA and CUTPA.

### IV. DAMAGES

Munoz seeks total damages of $9,124, including damages of $3,124 on the TILA claim, $1,000 on the EFTA claim, and $5,000 in punitive damages on the CUTPA claim. I have already awarded her $1,000 on the EFTA claim and that portion of my earlier ruling remains intact.

Under TILA, Munoz is entitled to her actual damages, plus twice the amount of the finance charge subject to a $2,000 cap. 15 U.S.C. Sec. 1640(a); *see Franco v. A Better Way Wholesale Autos, Inc.*, 690 Fed Appx. 741, 744 (2d Cir. 2017). In her original brief filed in support of the motion for default judgment, Muñoz indicates that she seeks "liquidated damages" including $752 for GAP insurance and $372 for the interest on the GAP, as well as statutory damages on the TILA claim of $2,000. ECF No. 11-1 at 21. Her affidavit indicates that even though she did not want GAP coverage, she paid the cost of the GAP insurance - $752; it is thus clear she is entitled to that amount in actual damages. But it is not clear how the $372 interest

figure was derived; a calculation set forth in a footnote in her brief suggests that it represents an attempt to calculate interest on the cost of the GAP throughout the 54-month term of the contract, ECF No. 11-1 at 21, but there are two problems with this. First, I can find no evidence in the record – and for damages on a default judgment a plaintiff must submit evidence and may not rely on her allegations, *Narula v. Jackson*, 2019 WL 1177856 *3 (E.D.N.Y. Jan. 31, 2019 (citing cases) – that she has actually incurred those interest charges to date or, for that matter, that she is still paying on the contract. Her affidavit does not address this, and Munoz does not point to any other evidence that does. (The record does include a December 1, 2018 authorization for electronic monthly deductions from Munoz's checking account, ECF No. 11-6, but it is not clear whether these deductions are continuing and, if they are, how much interest she has paid to date on the GAP charge.) Second, the calculation, even on its own terms, appears to be incorrect. I calculate the interest on the $752 GAP insurance charge, using the 54-month contract term and the 18.99% APR shown in the contract, as follows: $752 x 18.99% x 4.5 years (i.e., 54 months) = $642.62. In any event, it is clear that Munoz is entitled to the $2,000 maximum in statutory damages – representing twice the finance charge (i.e., here, the cost of GAP insurance plus interest on that cost) subject to the $2,000 cap, because whether one uses Munoz's figure for interest ($372) or mine ($642.42), twice the amount consisting of the interest plus the GAP charge exceeds $2,000. Because of the lack of clarity regarding actual damages, I will allow Munoz to submit an additional affidavit and explanation in support of her actual damages if she believes she is entitled to any actual damages beyond the $752 she paid for the GAP insurance.

With regard to punitive damages under CUTPA, I agree with Munoz that it was reprehensible, and worthy of punishment, for Executive Kia to impose the mandatory GAP

7

insurance as part of its "low income program," which suggests that this practice was part of a pattern of conduct aimed at low-income individuals. I will thus award punitive damages. I will wait to set the amount of punitive damages until Munoz has had an opportunity to make an additional submission with respect to her actual damages, as punitive damages should bear a reasonable relationship to actual damages.

I also intend to award Munoz her reasonable attorney's fees, provided that she submits an itemization of those fees, including contemporaneous time entries, within 14 days of this ruling. The additional submission with respect to actual damages must be submitted at the same time.

## V. CONCLUSION

For the reasons set forth above, Muñoz motion for reconsideration (ECF No. 15) is GRANTED. The motion for default judgment (ECF No. 11) is GRANTED as to liability on Muñoz's TILA, EFTA, and CUTPA claims. I will set the final amount of damages after receiving the additional submissions referred to above, which are due in 14 days.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut

November 12, 2020