UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| YAHAIRA MUNOZ, | : | CIVIL ACTION NO. 3:19-cv-1793-MPS |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JLO AUTOMOTIVE, INC. d/b/a | : | |
| EXECUTIVE KIA, | : | JULY 21, 2022 |
|     Defendant | : | |

## **AMENDED COMPLAINT**

### I. INTRODUCTION

1.      This is a suit brought by a consumer regarding the purchase and financing of a motor vehicle.  Plaintiff brings this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant, JLO Automotive, Inc. d/b/a Executive Kia ("Executive Kia"), for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA").

### II. PARTIES

2.      Plaintiff, Yahaira Muñoz is a consumer and natural person residing in Meriden, Connecticut.

3.      Defendant, Executive Kia, is a Connecticut corporation that operates a used automobile dealership in Wallingford, Connecticut.

### III. JURISDICTION

4. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e), 15 U.S.C. § 1693m(g), 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

5. This court has jurisdiction over Executive Kia because it is a Connecticut corporation that regularly conducts business in this state.

6. Venue in this court is proper, because the Plaintiff resides in Connecticut, and the claims involve a transaction that occurred in Connecticut.

### IV. FACTUAL ALLEGATIONS

7. On or about November 28, 2018, Plaintiff visited Executive Kia interested in purchasing a used vehicle.

8. Plaintiff found a 2011 Chevrolet Equinox (the "Vehicle") that met her requirements, and she agreed to purchase it for a cash price of $11,107.

9. Plaintiff returned on December 1, 2018 to complete the transaction and execute the necessary paperwork.

10. Plaintiff agreed to pay a $1,100 down payment and planned to finance the remaining balance pursuant to a retail installment sales contract (the "Contract").

11. As Plaintiff was reviewing the Contract with "Joe", a member of the Executive Kia finance staff, she questioned a $752 charge for "GAP insurance".

12. Joe responded that GAP insurance was a mandatory component of the transaction.

13. "GAP insurance" is an addendum to a retail installment sales contract, which provides that, subject to certain conditions and limitations, in the event of a total

loss of the Vehicle the holder of the contract will accept the insurance proceeds in full satisfaction of the outstanding balance owed on the contract. A GAP addendum, or "GAP insurance", would be present only in a financed transaction.

14. Plaintiff was not interested in purchasing GAP insurance, but she decided to proceed with the transaction and to pay the cost because she believed that it was mandatory.

15. Joe also asked Plaintiff to provide her checking account information so that the finance company, non-party Credit Acceptance Corporation ("CAC"), could make automatic withdrawal from her bank account.

16. Plaintiff did not want to enroll in automatic withdrawals, but Joe told her that CAC required that she agree to do so.

17. In reality, CAC does not require consumers to agree to electronic fund transfers.

18. Joe told Plaintiff that the GAP insurance and automatic withdrawals were part of Executive Kia's "low income program" and that was why she was required to agree to these items if she wished to finance the transaction.

19. Plaintiff completed the transaction and executed the contract documents and took delivery of the Vehicle.

20. Plaintiff began to experience mechanical problems with the Vehicle in January 2019.

21. At that time, Plaintiff told Executive Kia she either wanted them to fix the Vehicle or replace it.

22. Despite giving no indication that Plaintiff wished to enter into another financed transaction, Executive Kia obtained her credit report from one or more of the Consumer Reporting Agencies ("CRAs") without authorization or a legitimate purpose.

23. Specifically, the Contract for the Vehicle had been assigned by Executive Kia to CAC, and Executive Kia was not a creditor of Plaintiff and was not entitled to access Plaintiff's credit reports for purposes of conducting an account review.

24. Additionally, Plaintiff did not owe Executive Kia any other debt at that time, and it was not entitled to access Plaintiff's credit reports for purposes of assisting with debt collection.

25. Additionally, Plaintiff had not indicated to Executive Kia that she was interested in applying to it for new credit, so Executive Kia was not entitled to access Plaintiff's credit reports for purposes of assessing a credit application.

26. Plaintiff returned to Executive Kia again in July 2019 after again experiencing additional mechanical problems with the Vehicle when she again requested Executive Kia either repair the Vehicle or replace it.

27. Again, despite giving no indication that Plaintiff wished to entered into another financed transaction, and despite the fact that Plaintiff did now owe a debt to Executive Kia, Executive Kia obtained her credit report from one or more of the CRAs without authorization or a legitimate purpose.

## V. CAUSES OF ACTION

### A. Truth in Lending Act

28. By conditioning the extension of credit on the purchase of the "GAP insurance", said charge was a finance charge within the scope of TILA and Regulation Z thereof.

29. Executive Kia violated TILA by including the cost of the "GAP insurance" as part of the amount financed and by not disclosing it as part of the finance charge even though this charge was incidental to the extension of credit.

30. As a result, the required disclosures are inaccurate and in violation of Regulation Z.

31. Executive Kia is liable to Plaintiff for actual damages plus additional statutory damages of $2,000 and attorney's fees and costs.

### B. Electronic Funds Transfer Act

32. Executive Kia required the Plaintiff to allow CAC to debit Plaintiff's checking account automatically as a condition of financing.

33. By conditioning the extension of credit to Plaintiff on her repayment by means of preauthorized electronic fund transfers, Executive Kia violated EFTA, 15 U.S.C. § 1693k.

34. Executive Kia is liable to Plaintiff for actual damages, statutory damages of up to $1,000, and attorney's fees and costs.

### C. Fair Credit Reporting Act

35.  15 U.S.C. § 1681b(f) prohibits any person from obtaining a consumer report for any purpose unless there is an authorized purpose for obtaining the report.

36.  As alleged in paragraphs 23-25 and 27, Executive Kia did not have an authorized purpose for requesting Plaintiff's consumer reports.

37.  Plaintiff did not initiate a transaction within the meaning of § 604(a)(3)(F)(i) of the FCRA.

38.  Executive Kia did not have a legitimate purpose for accessing Plaintiff's reports because she had not applied to it for new credit, she was not past due in any financial obligation to Executive Kia, and she had no outstanding debt obligations to Executive Kia.

39.  Notwithstanding Executive Kia's lack of a legitimate purpose, it accessed Plaintiff's reports.

40.  On information and belief, Executive Kia accessed the reports so that it could make a proposal to trade in the Vehicle for another Vehicle and it hoped to profit through arranging the financing of the other Vehicle. That is not a legitimate purpose when Plaintiff had not indicated that she wished to apply for financing for purposes of making such a trade.

41.  Executive Kia acted knowingly and deliberately in accessing Plaintiff's credit reports in the hope of negotiating another financed purchase despite the fact that it was not entitled to access Plaintiff's report.

42.  In the alternative to paragraph 41, Executive Kia acted negligently by accessing Plaintiff's report when it was not entitled to do so.

6

43. Plaintiff suffered harm, because the hard inquiry on her report resulted in a reduction to her credit score.

44. For their willful violations of the FCRA, Executive Kia is liable to Plaintiff for actual damages, statutory damages attorney's fees, costs, and punitive damages pursuant to FCRA § 1681n.

45. For their negligent violations of the FCRA, Defendant is liable to Plaintiff for actual damages, attorney's fees, and costs pursuant to FCRA § 1681o.

### D. Connecticut Unfair Trade Practices Act

46. Executive Kia's conduct, as aforesaid, was deceptive and unfair and in violation of CUTPA, Conn. Gen. Stat § 42-110a *et seq.,* in connection with the transaction.

47. Specifically, Executive Kia violated TILA, EFTA and the FCRA.

48. Additionally, Executive Kia required the purchase of GAP insurance even though Plaintiff had not specifically ordered GAP insurance and did not wish to purchase it.

49. Plaintiff has suffered an ascertainable loss in that she was required to purchase GAP insurance when she did not wish to and has experienced a diminution in her credit score from Executive Kia's unauthorized credit report inquiries, and lost the flexibility for the timing of payments to CAC that she would otherwise enjoy.

50. For Executive Kia's violations of CUTPA, Plaintiff seeks actual damages, punitive damages and a reasonable cost and attorney's fee.

Wherefore, Plaintiff claims actual damages, statutory damages under TILA of $2,000, statutory damages under EFTA of $1,000, statutory damages under the FCRA of $2,000 for the separate violations, punitive damages, and attorney's fees and costs

        PLAINTIFF, YAHAIRA MUNOZ

By: /s/ *Daniel S. Blinn*
    Daniel S. Blinn (ct02188)
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax. (860) 571-7457
    dblinn@consumerlawgroup.com

## CERTIFICATION

      I hereby certify that on this 21st day of July, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                               /s/ *Daniel S. Blinn*
                                             Daniel S. Blinn